<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID MARKOWITZ and ROSALIE MARKOWITZ, | Civ. No. 05-1405 (GEB) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| CELANESE CORPORATION, CELANESE AMERICAS CORPORATION, and THE CELANESE AMERICAS RETIREMENT MEDICAL PLAN, | |
| Defendants. | |

<u>**BROWN, Chief Judge**</u>

     This matter comes before the Court upon: (1) defendants Celanese Corporation, Celanese Americas Corporation, and the Celanese Americas Retirement Medical Plan's (collectively "Defendants") motion for summary judgment; and (2) plaintiffs David Markowitz and Rosalie Markowitz's (collectively "Plaintiffs") cross-motion for summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The parties have fully briefed the motion, and the Court, having considered all the parties' submissions, hereby decides the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will: (1) grant in part and deny in part Defendants' motion; and (2) deny Plaintiffs' cross-motion.

**I.    BACKGROUND**

     Plaintiff David Markowitz is a former Senior Executive Vice President and a former member of the Executive Committee for American Hoechst Corporation ("AHC"), a predecessor corporate entity of Celanese Corporation and Celanese Americas Corporation ("Celanese").

1

(Markowitz Dep. 8-12.)  Mr. Markowitz retired from AHC on November 1, 1985, at the age of 62.  (Markowitz Dep. 8, 14; Keegan Decl. Ex. 9.)

Upon his retirement, Mr. Markowitz and his wife, Mrs. Rosalie Markowitz, began receiving benefits pursuant to AHC's retirement plan.  (Cunningham Dep. 39-40.)  Those benefits include payment of 100% of Plaintiffs' medical and dental expenses.  (*Id.* 53-54, 61.)  Plaintiffs have received those benefits since 1985, and continue to receive those benefits.  (*Id.* 39-40.)

A.     **The Plan Documents**

Plaintiffs received their benefits in part pursuant to AHC's Retiree Medical and Medicare Supplemental Plan ("AHC Base Plan"), which provides retiree medical benefits to all former employees.  The AHC Base Plan summary plan description ("SPD") states, in relevant part:

> **Section 1.  Introduction**
>
> In order to provide retirees and their dependents with continued security in retirement, [AHC] offers medical benefits comparable to the level of coverage offered to active employees.  This means that AHC retirees are assured the same level of medical coverage through the AHC Retiree Medical and Medicare Supplement Plan that they would have if they were still actively employed.
>
> Effective January 1, 1985, AHC redesigned the Retirees Medical and Medicare Supplement Plan.  The plan will continue to provide retirees and their covered dependents with protection and security through a one million dollar lifetime benefit and comprehensive medical coverage.  To encourage the wise use of medical services, other plan provisions have changed . . . .

(Keegan Decl. Ex. 3 at 1.)  As with all the other documents relevant to this case, the parties do not dispute the existence of, or the language contained in, the AHC Base Plan SPD – they disagree only about what effect the documents have on Plaintiffs' benefits.

Plaintiffs also receive their benefits pursuant to a supplemental retiree medical plan sponsored by AHC ("AHC Supplemental Plan").  (Cunningham Dep. 34-35, 53-55.)  The AHC Supplemental Plan provides to certain former AHC executives 100% coverage of any medical

and dental expenses not otherwise covered by the AHC Base Plan. (Cunningham Dep. 61; Keegan Decl. Ex. 4 at 1, Ex. 5 at 1.) It is one of a number component benefit plans that comprise the benefits plans for various executive retirees. (Cunningham Dep. 63-64.) Together, the AHC Base Plan and the AHC Supplemental Plan provide certain executive retirees, including Mr. Markowitz, 100% coverage of all medical and dental expenses. (*Id.* 35, 53-54, 62.) Plaintiffs refer to the AHC Supplemental Plan as the American Hoechst Executive Medical Program, but do not dispute that the plan provided for the 100% payment of their medical and dental expenses. (Pls.' Counter-Statement of Material Facts ¶ 5.) AHC offered coverage pursuant to AHC Supplemental Plan without a written plan document. (*Id.* 62.)

In or about 1989, AHC merged with Celanese. Soon after, AHC's successor corporate entities prepared two SPDs – each entitled "Retired Executive Medical/Dental Plan (Former AHC Employees)" ("AHC Supplemental Plan SPDs") – that described the terms of the AHC Supplemental Plan. (Cunningham Dep. 47-49, 62; Keegan Decl. Ex. 4 at 1, Ex. 5 at 1.) Those SPDs state, in relevant part:

> **ELIGIBILITY**
>
> If you are a retired officer of the former [AHC] who retired from active service prior to January 1, 1989, you are eligible for the benefits described in this booklet, effective January 1, 1989.

(Keegan Decl. Ex. 4 at 1, Ex. 5 at 1.) Those SPDs further provide:

> **PURPOSE**
>
> Under this Plan, you will be reimbursed for certain medical and dental expenses incurred by you or your dependents that are not covered under the Employee Benefit Plan.

(*Id.*) The AHC Supplemental Plan SPDs included a clause that states:

> The Company reserves the right to modify this Plan at any time and to terminate it at any time with respect to any or all individuals covered thereby.

(*Id.* Ex. 4 at 4, Ex. 5 at 4.)  These AHC Supplemental Plan SPDs were prepared specifically for the benefits that certain executive retirees of AHC who retired prior to January 1, 1989 were receiving.  (Cunningham Dep. 62-63; Keegan Decl. Ex. 4 at 1, Ex. 5 at 1.)  As with the other relevant documents in this case, the parties do not dispute the existence of, or the language contained in, the AHC Supplemental SPDs – they disagree only about the effect that the SPDs have on Plaintiffs' medical and dental benefits.

> B.      The Agreements

In addition to these plan documents, several other documents are also relevant to this case.  Prior to Mr. Markowitz's retirement, Mr. Dieter zur Loye, the president of AHC at the time, approached him to discuss his potential early retirement.  (Markowitz Dep. 13-16.)  The two discussed the terms of Mr. Markowitz's early retirement, and after brief discussions, they reached agreement on Mr. Markowitz's retirement terms.  (*Id.*)  Mr. zur Loye sent Mr. Markowitz a letter agreement, dated October 19, 1984, ("1984 Agreement") describing his understanding of Mr. Markowitz's "future activities" with AHC.  (Keegan Decl. Ex. 8 at 1; Markowitz Dep. 19.)  The 1984 Agreement described the terms that Mr. Markowitz discussed with Mr. zur Loye, and Mr. Markowitz signed the agreement.  (Keegan Decl. Ex. 8 at 2; Markowitz Dep. 21, 23-24.)  The 1984 Agreement states, in relevant part: "Once you reach age 65, you will receive any AHC benefits and privileges which a retired Executive Committee member would normally receive."  (Keegan Decl. Ex. 8 at 2.)

Mr. zur Loye later sent another letter agreement to Mr. Markowitz, dated October 15, 1985 ("1985 Agreement").  (*Id.* Ex. 9.)  The 1985 Agreement stated:

> This letter is to confirm our understanding with regard to your Agreement dated October 19, 1984 with [AHC], that you will take advantage of the AHC Early Retirement Incentive Program and you will retire effective November 1, 1985, instead of January 1, 1986.

(*Id.*)  It also provided that the terms of the 1984 Agreement "will continue in full force and effect." (*Id.*)  Mr. Markowitz also signed the 1985 Agreement. (*Id.* Ex. 9.)  Mr. Markowitz has testified that the reference in the 1985 Agreement to "AHC Early Retirement Incentive Program" referred to the benefits described in the 1984 Agreement. (Markowitz Dep. 35-36.)

Attached to the 1985 Agreement was a chart entitled "Early Retiree: David Markowitz (#149)" ("Chart"). (Keegan Decl. Ex. 11.)  The Chart includes the following entry:

> Medical            100% for life (free)
>                    Medicare Suppl. (10.1.88)

(*Id.*)  The parties agree that the 1984 Agreement, the 1985 Agreement, and the Chart collectively constitute Mr. Markowitz's early retirement agreement ("Early Retirement Agreement") with AHC. (Markowitz Dep. at 43; Cunningham Dep. at 50.)

Plaintiffs also refer in their briefs to a memorandum by AHC dated February 25, 1987 ("AHC Memorandum").  That memorandum, which appears to have been for AHC's own records, includes a chart with an entry that states:

> Medical Plan       100% Coverage/Life
>                    – paid by AHC
>
> Dental Plan        100% Coverage/Life
>                    – paid by AHC

(Silodor Decl. Ex. B.)

### C. Celanese's Changes to the Plan

In 2003, Celanese consolidated many of its component benefit plans that defined the benefits that it provided to its former employees. (Cunningham Dep. at 39-41, 65; Keegan Decl. Ex. 6.)  The changes that Celanese implemented would affect executive retirees in the following ways:

(1) a cap would be imposed on the amount that Celanese would contribute toward the cost of

coverage under the retirement plan; (2) if the cap amount is reached, Medicare eligible participants who retired before 1993 (including Mr. Markowitz) would have to pay the difference between the cap amount and the total cost of coverage; (3) if the cap amount is reached, the executive retirees' coverage would switch from whatever benefits they had pursuant to the plan to the Aetna Indemnity Plan; and (4) if the cap amount is reached, the AHC Supplemental Plan for executive retirees would end, and Celanese would replace the dental benefits provided pursuant to the AHC Supplemental Plan with a new dental plan at no cost to the executive retirees. (Cunningham Dep. 51, 58, 60, 67-68; Keegan Decl. Ex. 6.)

Plaintiffs filed the complaint in this action on March 9, 2005. Plaintiffs assert three claims against Defendants: (1) clarification of future benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3); and (3) equitable estoppel. (Am. Compl. ¶¶ 18-24.) On April 7, 2006, Defendants filed their motion for summary judgment with respect to each of Plaintiffs' claims. On May 2, 2006, Plaintiffs filed their opposition papers and their cross-motion for summary judgment with respect to each of their claims. The parties have completed briefing the two motions, and the Court will now address those motions.

## II. DISCUSSION

### A. Standard for a Motion for Summary Judgment

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw

all reasonable inferences in favor of the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).  In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

   B.  Plaintiffs' Motion and Defendants' Cross-Motion

     1.  Plaintiffs' ERISA Claims

      a.  Applicable Law

"ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits."  *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 901 (3d Cir. 1995) (internal quotations omitted).  "ERISA recognizes two types of employee benefit plans:  pension plans and welfare plans."  *Id.* (citations omitted).  "In general, welfare plans provide 'medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .'"  *Id*. (quoting 29 U.S.C. § 1002(1)).  "Pension plans provide:  [(1)] retirement income to employees or [(2)] result in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  *Id.* (citations omitted).

"The implications of this [distinction] are significant" because "[a]lthough ERISA contains elaborate vesting requirements for pension plans, ERISA does not require automatic vesting of welfare benefit plans."  *Id*.  "Congress did not impose vesting requirements on welfare plans because it determined that '[t]o require the vesting of [those] ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.'"  *Id.* (quoting *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3d Cir. 1990)).  In some situations, however, "a welfare plan may provide a vested

benefit." *Id.* "The plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested." *Id.* (citation omitted).

ERISA requires every plan to be "established and maintained pursuant to a written instrument," the contents of which are statutorily specified. 29 U.S.C. § 1102(a)(1). "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Unisys*, 58 F.3d at 901; *Confer v. Custom Eng. Co.*, 952 F.2d 41, 43 (3d Cir. 1991) (holding that "[o]nly a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan"); *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 77 (3d Cir. 1991), *cert. denied*, 503 U.S. 938 (1992) ("the requirement of 29 U.S.C. § 1102(a)(1) that all ERISA plans be written prevents an unwritten amendment from being an enforceable part of an ERISA plan")). "Accordingly, any retiree's right to lifetime medical benefits under a plan can only be found if it is established by the terms of the ERISA-governed employee benefit plan." *In re Unisys*, 58 F.3d at 901.

In deciding whether a plaintiff is entitled to benefits, "[a] court must examine the plan documents." *Id.* (citation omitted). "Extra-ERISA commitments, such as the right to receive free lifetime coverage, must be found in the plan documents and stated in clear and express language." *Id.* (citations omitted). "The written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." *Id*. "Among the required documents, one of the most important is the Summary Plan Description ("SPD") provided to plan beneficiaries [because they are] the *primary* informational document issued to plan beneficiaries to inform them of their rights and obligations under a plan." *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118, 1130 (D.N.J. 1995) (emphasis in original). A plaintiff claiming that the disputed benefits are for the duration of his life must demonstrate that the plan documents include language to that effect – "[s]ilence on

8

duration . . . may not be interpreted as an agreement by the company to vest retiree benefits in perpetuity." *Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 147 (3d Cir. 1999). *See also Local 56*, 898 F. Supp. at 1132 (holding that "[w]ithout more specific terms in plan documents suggesting health insurance benefits exist, the Court may not intuit a vested benefit").

### b. Plaintiffs' ERISA Claim Against Defendants

Here, the relevant plan documents that the Court must consider are the AHC Base Plan SPD and the AHC Supplemental Plan SPD. The AHC Base Plan SPD does not include any language stating that the described medical and dental benefits would continue for the life of the beneficiary. It states only, in relevant part: "AHC retirees are assured the same level of medical coverage through the AHC Retiree Medical and Medicare Supplement Plan that they would have if they were still actively employed" and that, "[e]ffective January 1, 1985, AHC redesigned the Retirees Medical and Medicare Supplement Plan [such that] [t]he plan will continue to provide retirees and their covered dependents with protection and security through a one million dollar lifetime benefit and comprehensive medical coverage." (Keegan Decl. Ex. 3 at 1-2.)

As for the AHC Supplemental Plan, AHC had not provided a written plan document for that plan at the time of Mr. Markowitz's retirement. (Cunningham Dep. 62.) Defendants argue that the Court should refer to the language contained in the AHC Supplemental Plan SPDs, which they argue establish the terms of the AHC Supplemental Plan. (Defs.' Br. at 19-22.) Plaintiffs, in contrast, argue that the Court should ignore the AHC Supplemental Plan SPDs because they were prepared after Mr. Markowitz retired. (Pls.' Reply Br. at 5.)

Regardless of whether the Court looks to the AHC Supplemental Plan SPDs, Plaintiffs have not identified any language contained in the controlling plan documents, i.e. the AHC Base Plan SPD or the AHC Supplemental Plan SPDs, stating that the benefits provided to the beneficiaries would continue for life.

Plaintiffs argue that "in negotiating Mr. Markowitz's early retirement, AHC confirmed orally and in writing that this medical coverage, *i.e.* 100% of covered health and dental expenses, would continue for the rest of his and his spouse's life." (Pls.' Br. at 3.) Given that the relevant plan documents do not contain any language suggesting that Plaintiffs' benefits would continue for the duration of his life, the Court cannot consider the extrinsic evidence concerning oral promises relating to his benefits. *Hozier*, 908 F.2d at 1164 ("[b]ecause the record is undisputed that defendants failed to reduce their purported 1987 amendment to a writing before plaintiffs were terminated, we must evaluate the summary judgment motions on the assumption that the unamended 1985 severance plan was still in effect").

As for written documents, Plaintiffs identify two in support of their ERISA claim: (1) the Chart; and (2) the AHC Memorandum. Neither document, however, vested Plaintiffs' medical and dental benefits because they do not constitute plan documents that define the terms of Plaintiffs' benefits.

Here, the Chart was an attachment to the 1985 Agreement, which states only, in relevant part: "[t]his letter is to confirm our understanding . . . that you will take advantage of the AHC Early Retirement Incentive Program" more fully described in a separate letter. (Keegan Decl. Ex. 9.) Neither the 1985 Agreement nor the documents to which it refers contain the "clear and express language" for vesting lifetime retiree medical benefits – indeed, they contain no such reference. *In re Unisys*, 58 F.3d at 902. The same is true for the 1984 Agreement, as well as the AHC Base Plan SPD that was available at the time of Plaintiffs' retirement. (*Id.* Exs. 3, 8.)

The AHC Memorandum, meanwhile, appears to be a document for AHC's own internal records that summarizes – again in chart format – Mr. Markowitz's benefits. (Silodor Decl. Ex. B.) Given the shorthand nature of the document and its description of Mr. Markowitz's benefits only, the Court cannot consider either the Chart or the AHC Memorandum to be plan documents defining the terms of retirement for beneficiaries of AHC's welfare plans. *See In re Unisys*, 58 F.3d at 902 ("ERISA's framework ensures that employee benefit plans be governed by written

documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits"); *Local 56*, 898 F. Supp. at 1129-30 ("for a medical benefit plan's benefits to be vested, an intent to vest such benefits should be evident from the language of the plan documents[,]" where "one of the most important [documents] is the [SPD]"). *See also Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1316-17 (3d Cir. 1991) (holding that an "overview brochure" that summarized a life insurance plan was not a plan document, even though the brochure was the only document distributed to employees and a summary plan description did not exist).

Defendants' motion for summary judgment with respect to Plaintiffs' ERISA claim is therefore granted.

### 2.     Plaintiffs' Claim of Breach of Fiduciary Duty

Plaintiffs claim that Defendants breached their fiduciary duty by "fail[ing] to create an SPD or other formal plan document with respect to the [AHC Supplemental Plan], in compliance with ERISA . . . ." (Pls.' Br. at 13.)  According to Plaintiffs, "[D]efendants breached their fiduciary duty by not creating an SPD or formal plan document for the [AHC Supplemental Plan], resulting in the plaintiffs' potential inability to enforce their rights to vested medical benefits." (*Id.* at 15.)

"The jurisprudence of this area is marked by the drawing of a sharp distinction between 1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and 2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary)." *Walling v. Brady*, 125 F.3d 114, 119 (3d Cir. 1997).  Here, the relevant plan consists of the AHC Base Plan and the AHC Supplemental Plan.  Plaintiffs argue that Defendants, as administrators, breached their fiduciary duty by failing to provide, at the time of Mr. Markowitz's retirement, an SPD describing 100% payment of medical and dental benefits.  Plaintiffs do not assert their

breach of fiduciary duty claim, however, on a theory that Defendants misrepresented the terms of their benefits.  *Cf. Burstein*, 334 F.3d at 384 (holding that the elements of a breach of fiduciary duty claim based on misrepresentation requires a showing that:  (1) the defendant was acting as a fiduciary; (2) the defendant made misrepresentations; (3) the misrepresentations were material; and (4) the plaintiff detrimentally relied on the misrepresentations).

       The Third Circuit Court of Appeals has "repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act."  *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995).  "[S]ubstantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements."  *Id.*  The court has, however, "recognized the possibility of a remedy where the plaintiff can demonstrate the presence of 'extraordinary circumstances.'"  *Id.* at 124 (quoting *Gridley*, 924 F.2d at 1319).  "Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions."  *Id.*

       Plaintiffs have failed to provide any evidence that would support their breach of fiduciary claim.  They claim that AHC "fail[ed] to create an SPD or other formal plan document" describing the AHC Supplemental Plan's provision of 100% coverage of medical and dental expenses, but do not claim that the failure was the result of bad faith constituting "extraordinary circumstances."  (Pls.' Br. at 13.)  For example, the AHC Supplemental Plan applies to numerous executive retirees other than Mr. Markowitz, and any failures by Defendants would have affected those retirees as well.  Plaintiffs have not, however, provided any evidence showing bad faith by Defendants towards the affected executive retirees generally.  Although AHC failed, at the time of Mr. Markowitz's retirement, to provide an SPD concerning Plaintiffs' 100% medical and dental coverage, Hoechst Celanese Corporation and Celanese prepared the AHC Supplemental SPDs in or about 1989, soon after the merger between AHC and Celanese.

Plaintiffs argue that Defendants have not only failed to provide an SPD concerning the AHC Supplemental Plan, but that "there is *no written plan*" for the benefits provided by the AHC Supplemental Plan. (Pls.' Reply Br. at 13 (italics in original).) This argument is unpersuasive. If there were indeed no written plan documents setting forth the terms provided by the AHC Supplemental Plan, then those terms would not even constitute part of the plan – only the terms set forth in the AHC Base Plan would. *See Confer*, 952 F.2d at 43 ("Section 402(a)(1) of ERISA requires that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument'" and "precludes oral or informal amendments to employee benefit plans") (quoting 29 U.S.C. § 1102(a)(1)); *Hamilton*, 945 F.2d at 77 ("the requirement of 29 U.S.C. § 1102(a)(1) that all ERISA plans be written prevents an unwritten amendment from being an enforceable part of an ERISA plan"); *Hozier*, 908 F.2d at 1164 ("[b]ecause the record is undisputed that defendants failed to reduce their purported 1987 amendment to a writing before plaintiffs were terminated, we must evaluate the summary judgment motions on the assumption that the unamended 1985 severance plan was still in effect"). Under those circumstances, Plaintiffs would not be able to recover on their breach of fiduciary claim with respect to the AHC Supplemental Plan because the only plan documents would be the AHC Base Plan SPD, which does not provide for 100% payment of Plaintiffs' medical and dental benefits.

In support of their argument, Plaintiffs cite to *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118 (D.N.J. 1995). *Local 56*, however, should be distinguished. There, the court denied the defendant's motion for summary judgment of the plaintiffs' breach of fiduciary duty claim because of a failure to disclose the terms of the plan through revised SPDs. *Local 56*, 898 F. Supp. at 1143. The defendant in that case, however, had substantially revised written plan documents, but did not provide beneficiaries with revised SPDs reflecting those changes. *Id.* at 1141. The court noted that, as a result, beneficiaries were relying on an outdated SPD that did not reflect the revised terms of the new plan documents. *Id.*

13

Here, at the time of Mr. Markowitz's retirement, AHC had not revised or added written plan documents that set forth the terms of the AHC Supplemental Plan. The only written plan documents in effect at the time concerned only the AHC Base Plan. Unlike the defendants in *Local 56*, then, Defendants here had no duty to provide SPDs concerning the AHC Supplemental Plan at the time of Mr. Markowitz's retirement because there were no written amendments to inform beneficiaries about.

Viewing the underlying facts and drawing all reasonable inferences in Plaintiffs' favor, AHC's failure to provide an SPD concerning the AHC Supplemental Plan was, at best, the result of neglect, not bad faith. That neglect was promptly remedied by Celanese soon after it became responsible for administering the plan. Defendants' motion for summary judgment with respect to this claim is therefore granted.

### 3. Plaintiffs' Claim of Equitable Estoppel

To succeed on a claim of equitable estoppel, "an 'ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.'" *Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003) (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994)).

There are genuine disputes of material facts concerning these factors, and summary judgment, in either party's favor, would be inappropriate. With respect to Defendants' motion, the Court must view the underlying facts and draw all reasonable inferences in favor of Plaintiffs. Viewing the facts in that light, Mr. zur Loye, as president of AHC, informed Mr. Markowitz, both in conversation and in writing, that full coverage of his medical and dental expenses would continue for the rest of his life. (Keegan Decl. Ex. 11; zur Loye Decl. ¶ 2.) Plaintiffs claim that they reasonably relied on those representations when Mr. Markowitz decided to retire, which he decided to do for additional reasons as well. (Markowitz Decl. ¶ 2; Markowitz Dep. at 15-17,

22, 38-39.) AHC had an incentive to encourage certain executives to take early retirement, including Mr. Markowitz – the 1985 Agreement refers to an "AHC Early Retirement Incentive Program." (Keegan Decl. Ex. 9.) At trial, Plaintiffs may be able to prove extraordinary circumstances by showing that AHC's representations were made in order to induce Mr. Markowitz to retire, despite the fact that were no written plan documents providing for such lifelong coverage. It remains possible for Plaintiffs to succeed at trial on this claim, and Defendants' motion for summary judgment is therefore denied.

With respect to Plaintiffs' cross-motion, the Court must again view the underlying facts and draw all reasonable inferences in favor of the non-movants, this time in favor of the Defendants. Viewing the facts in this light, Plaintiffs' reliance on the Chart and Mr. zur Loye's statements was unreasonable, given that the 1984 Agreement, the 1985 Agreement, and the AHC Base Plan SPD – all of which was available at the time of Mr. Markowitz's retirement – do not contain any language stating that Plaintiffs' benefits would continue for life. (Keegan Decl. Exs. 3, 8, 9.) Defendants may also prove at trial that there are no extraordinary circumstances in this case, namely, by showing that AHC did not deliberately attempt to induce Mr. Markowitz to take early retirement by misrepresenting the duration of Plaintiffs' benefits. Plaintiffs' cross-motion with respect to this claim is therefore denied.

### III. CONCLUSION

For the above reasons, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment is denied. An appropriate form of order is filed herewith.

Dated: September 18, 2006

                                                   s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.